COLLOTON, Circuit Judge.
This is Jason Powell’s second appeal concerning his efforts to gain an injunction against the enforcement of rules of the Iowa State Fair that forbid impeding traffic and bringing signs attached to poles and sticks to the Fair. In the first appeal, this court ruled that Powell was entitled to no more than certain narrow relief granted by the district court, because he failed to demonstrate a likelihood of success on the merits of his First Amendment claim or a threat of irreparable harm. Powell v. Noble, 798 F.3d 690 (8th Cir. 2015). The court remanded, however, for consideration of whether Powell was entitled to additional relief based on his claim under the Due Process Clause. On remand, the district court[2] denied Powell’s request for a broader preliminary injunction, and Powell appeals. Because Powell is unlikely to succeed on his due process claim and has failed to show irreparable harm, we affirm.
I.
The Iowa State Fair is an eleven-day annual event on the Iowa State Fairgrounds that attracts more than one million visitors per year. The 435-acre Fairgrounds are owned by the State of Iowa and managed by the Iowa State Fair Board. During the 2013 Fair, Powell went to a sidewalk outside an entrance to the Fairgrounds to share a religious message. Powell held a sign attached to a pole and engaged in conversations with passersby. Patrol officers working for the Fair approached Powell and told him that he must leave the sidewalk, but that he could continue his activity across the street. Powell alleges that he asked why he must leave, and that the officers told him that he would be arrested if he did not depart. Powell crossed to the other side of the street, but left shortly thereafter.
The following day, Powell returned to the Fair and stood on a sidewalk outside a different entrance to’ the Fairgrounds while holding a sign attached to an aluminum pole. A patrol officer again told Powell that he must leave. An Iowa State Trooper then arrived and escorted Powell to a booking area inside the Fairgrounds. The trooper issued Powell an ejection notice. The notice said that Powell was ejected for the duration of the 2013 State Fair and warned him that he would be charged with criminal trespassing, a simple misdemeanor, if he returned to the Fairgrounds during the 2013 Fair.
Powell sued the Iowa Commissioner of Public Safety, the Chief Executive Officer of the Iowa State Fair, a State Fair patrol officer, and the state trooper, alleging that they violated his rights under the First Amendment and the Due Process Clause. He sought injunctive and declaratory relief and nominal damages. The officials responded that they acted based on two unwritten Fair rules governing the activities of visitors: (1) “the activity must not im *902 pede the flow of people into, out of, or within the Fairgrounds,” and (2) “if a visitor brings a sign, the sign must not be attached to any kind of pole or stick due to safety concerns with the pole or stick being used as a weapon.” In his reply brief, Powell argued that these unwritten rules are unconstitutionally vague. The district court granted narrow preliminary injunc-tive relief as to one area near the Fairgrounds where the officials conceded that Powell’s activities would not likely impede traffic, but otherwise denied relief.
Powell appealed the denial of broader relief, and this court affirmed in part but remanded for further proceedings. The court concluded that Powell was unlikely to succeed on his First Amendment claim, because the area immediately outside the Fairgrounds was a limited public forum, and the restrictions on Powell’s speech were reasonable and viewpoint-neutral. Powell, 798 F.3d at 700-02. The court said, however, that'Powell’s separate allegation that the rules violated his due process rights “still implicates speech that both parties agree is protected,” and remanded the case “for consideration of whether Powell is entitled to preliminary injunctive relief based on his due process claim.” Id. at 703-04. On remand, the district court denied the injunction, concluding that Powell was unlikely to prevail on his due process claim and had failed to demonstrate irreparable harm.
A district court considering in-junctive relief evaluates the movant’s likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest. Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc). We review the district court’s denial of a preliminary injunction for abuse of discretion. Powell, 798 F.3d at 697.
II.
To justify an injunction in this context, Powell must establish a reasonable probability of success on his claim. Id. at 698. On remand, the district court concluded that Powell was unlikely to succeed on the merits of his due process claim, because the disputed rules did not have a chilling effect on Powell’s free speech rights. Powell responds that the district court simply relied on this court’s conclusion about his First Amendment claim and failed to analyze independently whether the Fair rules were unconstitutionally vague under the Due Process Clause.
Powell’s complaint is that the unwritten Fair rules are too vague to provide fair notice of what conduct is prohibited and to avoid arbitrary and discriminatory enforcement. See Grayned v. City of Rockford, 408 U.S. 104, 108-09, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). This court ruled in the first appeal that Powell is unlikely to succeed on a First Amendment claim, because the rules are reasonable restrictions on the time, place, and manner of speech. Given that speech covered by the Fair’s rules is properly restricted, Powell’s notice claim must be that the rules threaten to chill speech that falls outside the scope of the rules. In other words, Powell contends that the alleged vagueness of the rules leads Fairgoers to “steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.” Id. at 109, 92 S.Ct. 2294 (internal quotations omitted). We see no likelihood of success on this claim.
There is some doubt whether the vagueness doctrine applies with much force to rules of the Fair. The leading precedents concerning this doctrine involve penal statutes that chill speech with the threat of criminal punishment. See Kolender v. Lawson, 461 U.S. 352, 358-59, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *903 Smith v. Goguen, 415 U.S. 566, 572-74, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974). Where potential sanctions are less severe, as in the case of civil penalties, due process requires less precision. Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 498-99, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982). The rules of the State Fair are in yet another category. A violation of the disputed rules triggers no criminal liability and no civil monetary penalty; the only sanction for violating rules of the Fair is ejection from the Fair. Criminal penalties might apply only if an ejected person commits a separate offense of trespass after receiving clear notice of his ejection. Although a more stringent vagueness tést applies when a statute interferes with the right of free speech, id. at 499, 102 S.Ct. 1186, and the doctrine has been employed to invalidate non-penal regulations that resulted in the loss of employment, see Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 603-04, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), it is not clear how the doctrine applies to rules, like those of the State Fair, that prescribe such a modest consequence for a violation. See Milestone v. City of Monroe, 665 F.3d 774, 785 (7th Cir. 2011).
Whatever level of precision might be required for Fair rules to satisfy due process, however, Powell is not likely to succeed on his claim. Powell seeks to carry signs on poles and to display them while standing on sidewalks outside entrances to the Fairgrounds. He complains that he could not have known about the rules before he was directed to discontinue his activities in 2013. But Powell seeks prospective injunctive relief, and the relevant question is whether he now has fair notice of the rules. During the 2013 Fair and in this litigation, the State has given Powell clear notice of the rules against impeding traffic and carrying signs on poles and sticks. These rules prohibit Powell’s proposed conduct. “[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the [Fourteenth] Amendment for lack of notice. And he certainly cannot do so based on the speech of others.” Holder v. Humanitarian Law Project, 561 U.S. 1, 20, 130 S.Ct. 2705, 177 L.Ed.2d 355 (2010).
Powell argues that the terms of the rules are insufficiently clear to satisfy the requirement of due process. But “perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.” Ward v. Rock Against Racism, 491 U.S. 781, 794, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). The phrase “impeding traffic” and the phrase “sign ... attached to ... pole or stick” are not indeterminate. A person of ordinary intelligence in Powell’s position is on fair notice that standing continuously on a sidewalk that is a thoroughfare for pedestrian traffic outside a busy Fairgrounds is contrary to a rule against impeding traffic. He is also well informed that carrying a sign on a pole violates a rule against carrying signs attached to sticks or poles. The terms of the rules are clear in their application to Powell’s proposed activities.
For similar reasons, Powell is not likely to succeed on a claim that the Fair’s rules impermissibly encourage arbitrary and discriminatory enforcement. Due process allows for the exercise of some degree of judgment in law enforcement. Grayned, 408 U.S. at 114, 92 S.Ct. 2294. The rules at issue are not standardless; they provide the requisite “minimal guidelines to govern law enforcement.” Goguen, 415 U.S. at 574, 94 S.Ct. 1242; Grayned, 408 U.S. at 113 n.22, 92 S.Ct. 2294. Powell hypothesizes that patrol officers might arbitrarily remove him from standing on a sidewalk to display signs and speak with pedestrians while allowing other Fairgoers to pause on *904 a sidewalk to talk on a cellular telephone or consult a map. He complains that he is banned from displaying a sign affixed to a pole or stick outside the Fair while visitors are permitted to purchase and carry food on a stick within the Fairgrounds. These are not examples of discriminatory enforcement of the rules but rather pragmatic applications of the standards to disparate circumstances. Powell presented no evidence that the Fair authorities have discriminated in favor of others who are similarly situated to him based on viewpoint or other impermissible criterion.
Powell cites two circuit precedents that warrant discussion. In Stahl v. City of St. Louis, 687 F.3d 1038 (8th Cir. 2012), the court held unconstitutionally vague a criminal ordinance that forbade the display of signs “in eonsequence[ ] of which there is such a gathering of persons or stopping of vehicles as to impede either pedestrians or vehicular traffic.” Id. at 1039. The court ruled that the ordinance failed to give fair notice to a citizen who wished to display a sign on a highway overpass, because a violation depended on the reactions of third parties traveling below the overpass. As a result, the person displaying a sign could not know in advance whether the display would constitute a violation. The rules of the Fair as applied to Powell do not present the same concern. A person standing continuously on a sidewalk used for pedestrian traffic outside an entrance to the Fairgrounds is on fair notice that he could be cited for impeding traffic. If Stahl had been standing in the highway rather than on an overpass, then his case would have been quite different.
Powell also complains 'that the Fair’s rules are impermissibly vague because they are unwritten and not made explicit by well-established practice. He relies on a sentence from Families Achieving Independence & Respect v. Nebraska Department of Social Services, 111 F.3d 1408 (8th Cir. 1997) (en banc), where the court stated that “[s]o long as a policy is made explicit by ‘well-established practice,’ the fact that a policy is not committed to writing does not of itself constitute a First Amendment violation.” Id. at 1415 (internal citations and brackets omitted). The quoted sentence does not state a requirement of constitutional due process. It discusses whether an unwritten rule violates the First Amendment, and the authorities cited in support address whether a licensing statute constitutes a prior restraint on speech by giving unbridled discretion to government officials. See City of Lakewood v. Plain Dealer Publ’g Co., 486 U.S. 750, 770, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988); Lebron v. Nat’l R.R. Passenger Corp. (Amtrak), 69 F.3d 650, 658 (2d Cir. 1995). As discussed, the unwritten rules of the State Fair do not provide standardless discretion to enforcement personnel. That the rules are unwritten does not deprive Powell of fair notice prospectively, because he is now on clear notice that impeding traffic and carrying signs attached to a pole or stick is prohibited.
We also agree with the district court that Powell failed to show that he was likely to suffer irreparable harm. The loss of First Amendment freedoms constitutes irreparable injury, see Johnson v. Minneapolis Park & Recreation Board, 729 F.3d 1094, 1101-02 (8th Cir. 2013), but the State Fair rules impose no such threat. This court concluded that enforcement of the rules is not likely to infringe on Powell’s right to freedom of speech, and there is no vagueness in the rules that is likely to chill protected speech that is outside the scope of the rules.
Powell’s failure to show a likelihood of irreparable harm or a reasonable probability of success on the merits was sufficient reason for the district court to deny injunctive relief, so it is unnecessary *905 to address other factors. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 21-22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); Munaf v. Geren, 553 U.S. 674, 690, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008). The district court also thought that its local rules and the rule against raising issues for the first time in a reply brief “support denying” Powell’s due process claim. But it is not clear whether the court definitively ruled that Powell’s claim was waived, an<] we need not address the point in any event, because we have considered Powell’s appeal on the merits. The order of the district court is affirmed.

. The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.